IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:14-cv-04149-NKL ) |
| KIMBERLY SCHAEFER, | ) ) |
| Defendant. | ) ) ) |

**ORDER**

This is a declaratory judgment action concerning liability coverage under an automobile insurance policy issued by Plaintiff State Farm Mutual Automobile Insurance Company to Carl Winters. Defendant Kimberly Schaefer was injured in a motor vehicle accident involving Craig Winters, who was driving a car insured by a State Farm policy that was issued to his father, Carl Winters. The underlying case between Schaeffer and Craig and Carl Winters settled. As part of the settlement, Schaeffer received $1,250,000 from State Farm policies issued to Craig Winters and reserved the right to seek declaratory judgment on whether she is entitled to an additional $100,000 under the State Farm policy issued to Carl Winters. The sole issue before the Court is whether, under the terms of Carl Winters' insurance policy, his son, Craig Winters, was a "resident relative" at time of the accident. The Parties agree that if Craig Winters was a "resident relative,"

then Schaeffer is not entitled to the additional $100,000 under Carl Winters' policy; if he was not a "resident relative," then State Farm will pay the additional $100,000.

The Parties have submitted cross-motions for summary judgment, [Docs. 17, 21], and have stipulated that even if the Court finds that a factual issue exists which would otherwise make summary judgment inappropriate, the issues presented in the cross-motions should be resolved by the Court instead of by a jury. [Doc. 25]. After careful consideration of the Parties' briefs and the deposition testimony of Craig and Carl Winters, the Court finds that Craig Winters was not a "resident relative" of Carl Winters, and therefore, Schaefer is entitled to the additional $100,000 in liability coverage under Carl Winters' insurance policy. Schaefer's Motion for Summary Judgment, [Doc. 17], is granted and State Farm's Motion for Summary Judgment, [Doc. 21], is denied.

## I. Undisputed Facts

### A. Background

On August 1, 2013, Craig Winters was in a motor vehicle accident with Defendant Kimberly Schaefer in Missouri. At the time of the accident, Craig was driving a vehicle owned by his father, Carl Winters, which was insured in Carl's name by State Farm policy Number 239-2884-D24-16J. The policy provided liability coverage up to $100,000. Craig was separately insured by State Farm under an automobile policy, Number 101-6654-F29-16, which provided liability coverage up to $250,000, and under a personal liability umbrella policy, Number 16-BH0S000-1, which provided coverage up to $1,000,000.

Following the accident, Schaefer filed a Petition for Damages against Craig and Carl Winters, and the case was settled. *See* Case No. 2:13-cv-04212-NKL. State Farm made a settlement payment on behalf of Craig and Carl Winters to Schaefer in the amount of $1,250,000. The $1,250,000 settlement payment was comprised of the $250,000 limit on Craig's automobile policy and the $1,000,000 limit on Craig's personal liability umbrella policy.

As part of the settlement agreement, Schaefer agreed to dismiss the underlying lawsuit against Craig and Carl Winters, but reserved the right to pursue the additional $100,000 of coverage under Carl's State Farm automobile policy, Number 239-2884-D24-16J, through an action for declaratory judgment.

### B. Carl Winters' Policy

The Parties disagree about whether a provision in Carl's policy excludes liability coverage for an accident involving his son, Craig. The provision at issue states, in part:

> **If Other Liability Coverage Applies**
> 1.   If Liability Coverage provided by this policy and one or more other Car Policies issued to ***you*** or any ***resident relative*** by one or more of the ***State Farm Companies*** apply to the same accident, then:
>
>    a.   the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and
>    b.   the maximum amount that may be paid from all policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

[Doc. 1-3, at 23]. The policy defines "resident relative" as "a person, other than you, who resides primarily with the first person shown as a named insured . . . and

3

who is . . . related to that named insured . . . by blood. [Doc. 1-3, at 20]. The issue in this case is whether, within the meaning of Carl's State Farm policy, Craig was a "resident relative" of his father's household at the time of the August 1, 2013 accident. The Parties do not dispute that Craig is related to Carl, but they disagree on whether Craig resided primarily with Carl at the time of the accident.

### C. Evidence Related to Craig Winters' Primary Residence

At the time of the accident, Craig was approximately forty-nine years old. He was raised at his parents' home in Gardner, Kansas, and left the family home approximately thirty years ago to attend dental school. After graduation, Craig returned to Gardner, Kansas, lived in his own home, and practiced dentistry until he retired approximately four years prior to the accident.

After retiring, Craig leased his home. For the next four years, Craig traveled "all over," primarily in South and Central America. During that time and leading up to the accident in August 2013, he never had a long-term lease or rental agreement. Instead, he travelled and stayed with his wife's family or in hostels. For approximately six months prior to the accident, Craig lived in Lima, Peru with his wife in her mother's home. Craig testified that at the time of the accident, he had been living in South or Central America for four years. [Doc. 22-4, p. 21:17-21].

The year of the accident, Craig owned rental properties in the Kansas area and periodically returned to Gardner, Kansas from South or Central America to manage those properties. When he returned to Kansas, he stayed at his parents' home. Each visit lasted approximately one week. While there, he stayed in the spare bedroom which was also

4

used for other guests, though Craig considered it to be "basically [his] room." [Doc. 22-4, p. 21:12]. While staying with his parents, Craig and his family did activities together and ate meals as a family. He did not pay rent or utilities while visiting.

While Craig travelled and lived in South or Central America, his mail, including bills, insurance policies, and tax returns, was delivered to his parents' home. However, most of his mail was delivered via e-mail, and some mail was delivered to his private post office box. Some of his belongings were also stored in his parents' home, including files, tax returns, clothes, some furniture, and artwork.

At the time of the accident, Craig had been staying with his parents for two to three days. His return flight to Peru was booked for the upcoming week. The day of the accident, Craig borrowed his father's car. The police report from the accident lists one of Craig's rental properties as his home address, which was the same address listed on his driver's license. However, Craig informed the officer that mail should not be sent to the address on his driver's license because it was a rental property and provided his post office box information as his mailing address. He did not provide his parents' address.

A few days after the accident, Craig returned to Peru and stayed there for approximately two months until he returned to Kansas for matters related to the accident. He stayed with his parents for approximately one week, but after learning that he would need to be in Kansas for a prolonged stay, he rented an extended-stay hotel and then a loft in Kansas City, Missouri. He did so because he believed he was "too old to be living with [his] parents on a long-term basis." [Doc. 22-4, p. 14:14-16].

II. **Discussion**

### A. Ambiguity of "Resides Primarily"

Schaeffer first argues that the definition of "resident relative" – specifically the phrase "resides primarily" – is ambiguous and should be construed against State Farm. [Doc. 18, at p. 6]. When interpreting an insurance policy, a court gives the language its plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand" and is determined by consulting a standard dictionary. *Id.* An insurance policy is ambiguous when a phrase is reasonably open to different construction or when there is "duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 103 (Mo. Ct. App. 2004).

Although Schaeffer argues that the phrase "resides primarily" is ambiguous, she does not explain why it is ambiguous, how it is susceptible to more than one meaning, or how reasonable people would differ in their construction of the phrase. Further, other courts have found the phrase "resides primarily" in a State Farm policy to be unambiguous and enforceable. *See e.g.*, *Wallace v. State Farm Mut. Ins. Co.*, 2007 WL 4216132, at *3 (Ohio Ct. App. 2007) (stating that underinsured motorist provision defining "relative" as "a person related to you or your spouse by blood . . . who resides primarily with you" is unambiguous and enforceable and that the modifier "primarily" means that "there can be but one primary residence"); *Bauer v. USSA Casualty Inc. Co.*, 720 N.W.2d 187, 190 (Wis. Ct. App. 2006); *State Farm Mut. Auto. Ins. Co. v. Fultz*, 2007 WL 2789461, at *4 (N.D. W. Va. 2007); *State Farm Mut. Auto Ins. Co. v. Harris*, 882 So.2d 849 (Ala. 2003). Therefore, the Court will give the phrase "resides primarily" its

plain or ordinary meaning. The tenth edition of Merriam Webster's Collegiate Dictionary defines "primarily" as "for the most part," "chiefly," "primary," "of first rank, importance or value," or "principal." "To have a 'primary' residence under this commonly accepted definition means that [w]hile a person may reside in two places for purposes of insurance coverage, a person cannot reside 'primarily' in two places." *Bolin v. Progressive Nw. Ins. Co.*, 2009 WL 1010770, at *8 (E.D. Mo. 2009) (in the context of a State Farm underinsured motorist provision); *Fultz*, 2007 WL 2789461, at *4 (same).

### B. Whether Craig Winters Primarily Resided with Carl Winters

Plaintiff argues that Craig Winters was not a "resident relative" of Carl Winters because although Craig stayed with his parents from time to time, stored some of furniture and belongings at the house, and received his mail there, the home was not where he primarily resided. The Court agrees.

Craig moved out of his childhood home nearly three decades ago, went to school, and established a dental practice. After retiring from that practice, he leased his home and travelled extensively. At the time of the accident, Craig had been staying with Carl for two to three days as part of a one-week visit. He testified that at the time of the accident, he had lived in Lima, Peru with his wife and her family for approximately six months. [Doc. 22-4, pp. 10:22-13:2; 12:2-19]. Prior to his six month stay in Peru, he travelled throughout South and Central America for approximately four years, sometimes staying in a particular location for two or three months. *Id.* at 12:23-13:15. During this four year period, Craig would periodically return to Kansas and stay with his parents for approximately one week. These stays do not establish that Craig primarily resided there.

7

At the time of the August 2013 accident, Craig primarily resided with his wife's family in Lima, Peru. This conclusion is further supported by the fact that shortly after the accident, he returned to Peru on a pre-scheduled flight and remained there until he had to return to Kansas for litigation related to the accident. Further, upon returning to Kansas for a long-term visit – instead of his typical one-week visit – he made alternative arrangements to live in a hotel and apartment because he did not believe it was appropriate to live with his parents on a long-term basis. *Id.* at 14:6-16.

State Farm argues that Craig was a "resident relative" of Carl because he had no intention of making other arrangements for a place to keep his belongings or to stay when he was in town. [Doc. 24, at pp. 9-10]. In support of its argument, State Farm relies on *Miller v. Secura Insurance & Mutual Company of Wisconsin*, 53 S.W.3d 152 (Mo. Ct. App. 2001). In *Miller*, the policy defined "relative" as "a person living in your household and related to you by blood." *Id.* at 157. The *Miller* court looked at whether a son lived in his father's household at the time of the accident. During the year or two prior to the accident, the son stayed a "substantial number of nights" at his girlfriend's house, but also spent nights from time to time at his father's home. The other evidence established that a bedroom was maintained at his father's home, that his driver's license listed his father's address, and that his father's home was where he kept his clothing and other personal belongings, received his mail, did his laundry, and did yard work. *Id.* at 158. The Missouri Court of Appeals concluded that it was not substantially clear that the son had abandoned his father's home, "even if a majority of the nights in the period next before the accident found him sleeping over at his girlfriend's." *Id.* The Missouri court

8

stated that "[o]ther than physical presence, all official or semi-official indicia of an intent of domicile or residence tended to establish that [the son's] residence was in the home of his father . . . ." *Id.* The court also remarked that "an established residence is not lost by temporary absence therefrom, either on business or on pleasure, with no intention to abandon that residence or acquire another." *Id.* at 159.

While at first glance, *Miller* appears factually similar, it is distinguishable in an important way. Neither in *Miller* nor in any other case cited by State Farm was a court determining whether a person "primarily" resides with the insured. Instead, the Missouri Court of Appeals in *Miller* was determining whether the son lived in the father's house, not whether he "reside[d] primarily" in the father's house. Likewise, in *Mission Insurance Company v. Ward*, 487 S.W.2d 449 (Mo. banc. 1972) – also cited by State Farm – the Supreme Court of Missouri determined whether a grandson was a "member of the named insured's household" not whether he "reside[d] primarily" at the home.

The United States District Court for the Eastern District of Missouri has distinguished the policy language in cases like *Miller* and *Ward* from the policy language present in this case. In *Bolin v. Progressive Northwest Insurance Company*, 2009 WL 1010770 (E.D. Mo. 2009) – a case both factually and legally similar to this case – the plaintiff sued State Farm seeking payment under the underinsured motorist coverage provision in her insurance policies. The underinsured motorist provision in the State Farm policies provided coverage for "relatives," which was defined as "a person related to you or your spouse by blood . . . who resides primarily with you." *Id.* at *2-3. The plaintiff's son was killed in a motorcycle accident, and the plaintiff argued that her son

9

was a resident of her household at the time of his death and thereby covered under her policies. *Id.* at *1.

The evidence in *Bolin* established that six years prior to the accident, the plaintiff son's moved back into her house in Madison, Missouri, after living with a girlfriend for ten years. He moved his furniture, clothing, toiletries, collections, and other personal items into her house. *Id.* at *4. For the next five years, the son slept in motels or other temporary places near the construction sites where he was assigned to work. The plaintiff could not say how often her son slept in her house during that five year period. The son then went to Mississippi, where he lived in a work campground for approximately six months until his death. *Id.* During that time, other than clothing and personal items he needed for work, the items he moved into the plaintiff's house six years earlier remained at the house, and some of his mail was delivered there. In the six months prior to his accident, he visited plaintiff at her house for one week. His death certificate listed the plaintiff's house as his place of residence. Evidence suggesting that the son did not primarily reside with his mother included an insurance policy listing the son as a household member of an address in Hayti, Missouri, vehicle registrations and bank accounts listing the Hayti, Missouri address, and an accident report listing an address in Moberly, Missouri.

Concluding that the plaintiff's son did not reside primarily with the plaintiff, the Eastern District of Missouri stated that the son's bank records, registration records, and other documents all showed a residence other than the plaintiff's home, and "the fact that he kept some personal belongings at [the] [p]laintiff's home and received some mail there

10

[did] not change the fact that [in the six months prior to his death], he was not physically present there except for one week during Christmas." *Id.* at *8. The district court distinguished other Missouri state court decisions that determined whether a person was a resident of or a person living in the household of the policyholder, including *Miller*. In doing so, the district court stated that in the other Missouri cases, "the court . . . was not called upon to consider where the individual in question resided *primarily* at the relevant time" and remarked that "[w]hile a person may reside in two places for purpose of insurance coverage, a person cannot reside 'primarily' in two places. *Id.* at *8-9.

The facts and relevant policy provisions in this case are more similar to *Bolin* than to *Miller*. As to the law, State Farm argues that *Miller* confirms that a continuous bodily presence is not required as long as the person is using the home as a residence "in some fashion." [Doc. 26, p. 2]. But the policy language in the *Miller* case did not include the modifier "primarily." The policy provision in *Miller* more broadly defined "relative" as "a person living in your household . . ." not as a person "primarily" living in your household, which is an important distinction recognized by the district court in *Bolin*.

As to the facts, like in *Bolin* and *Miller*, Craig stored some of his personal items at his father's home and forwarded most of his mail there, but he also testified that most of his information was set up through electronic billing and that his father's address was used for "whatever still comes on paper." [Doc. 22-4, pp. 15:18-16:11]. And while the evidence suggests that Craig visited his parents more frequently than the son in *Bolin* did, the visits were for a short duration, and when required to stay longer, Craig made alternative arrangements. Further, unlike in *Miller*, where the son clearly lived with his

11

father before beginning to spend a substantial number of nights with his girlfriend, there is no evidence in this case that after moving out of his father's house thirty years earlier, Craig actually ever lived with his parents for longer than his typical one-week visits. While *Miller* stands for the proposition that physical absence due to travel would not be sufficient to sever what would otherwise be an established residence, there is no evidence that Craig ever resided with his parents after retiring and leasing his home.

State Farm also argues that there is no evidence to support a finding that Craig primarily resided any other place and therefore, where he stored some of his belongings was his sole residence. [Doc. 22, p. 11]. However, it is an uncontroverted fact that for approximately six months prior to the accident, he lived in Lima, Peru, and in the year prior to the accident, he had returned to Kansas only five or six times for business purposes. [Doc. 22-4, pp. 10:22-11:2; 11:15-19; 14:17-15:1]. State Farm also points to Craig's testimony that he believed his father's house to be his residence. However, the line of questioning surrounding that response was vague. For instance, when asked to clarify, Craig testified that "Kansas has been my home for 45 years. I've been living in South America for five. I still consider that my home," [Doc. 22-4, p. 21:13-21], suggesting that he meant Kansas was his home in a symbolic way. And while Craig testified that he did not have a residence elsewhere, *Id.* at 21:23-25, it is clear that under the meaning of the terms in Carl's policy, at the time of the accident, Craig primarily resided in Peru, not in Carl's home.

The evidence in this case may have been sufficient to support a finding that Craig was a "relative" under the policy provisions in *Miller*, but it is insufficient to support a

12

finding that he was a "resident relative" under the actual policy provisions in Carl's policy. Accordingly, State Farm's Motion for Summary Judgment is denied and Schaeffer's Motion for Summary Judgment is granted.

## III. Conclusion

For the reasons set forth above, Schaeffer's Motion for Summary Judgment, [Doc. 17], is granted, and State Farm's Motion for Summary Judgment, [Doc. 21], is denied. Schaeffer is entitled to the additional $100,000 liability coverage provided under Carl Winters' policy.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 12, 2014
Jefferson City, Missouri